# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MARSHA A. MESSINA,
    Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:14-cv-104

Black, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 11), the Commissioner's response in opposition (Doc. 16), and plaintiff's reply memorandum (Doc. 19).

## I.  Procedural Background

Plaintiff filed applications for DIB and SSI in November 2010, alleging disability since July 17, 2008, due to arthritis, drugs, alcohol, and lower spine and hip problems. These applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Anne Shaughnessy. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On August 20, 2012, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since October 22, 2010, the day after the last ALJ decision (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: lumbar strain and sprain and diffuse degenerative spondylosis of the cervical spine (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following: She may lift/carry up to ten pounds frequently or twenty pounds occasionally. She can stand/walk for only two hours in an 8-hour workday, and she can sit for six hours in an 8-hour workday, with normal breaks. She cannot climb ropes, ladders or scaffolds. She can occasionally stoop, kneel, crouch, crawl, or reach overhead bilaterally. She should avoid any concentrated exposure to extreme cold or vibrations.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]

7. The [plaintiff] was born [in] . . . 1968 and was 39 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from July 17, 2008, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(Tr. 21-28).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[1]Plaintiff's past relevant work was as a construction flagger, heavy equipment operator, warehouse worker, and pallet checker.  (Tr. 27, 63, 234).
[2]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform 8,000 sedentary, unskilled jobs in the regional economy as a surveillance system monitor, credit card information verifier, and product inspector.  (Tr. 28, 64).

4

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

Plaintiff asserts three assignments of error on appeal. First, plaintiff argues the ALJ erred in failing to give greater weight to the opinions of her treating medical providers. Second, plaintiff maintains the ALJ erred in finding her subjective statements less than fully credible. Third, plaintiff contends the ALJ's residual functional capacity (RFC) formulation is not substantially supported by the evidence of record because it does not account for all of her

5

impairments or their accordant limitations. (Doc. 11). Plaintiff's first and third assignments of error will be addressed together.

      1. <u>Whether the ALJ erred in weighing the opinion evidence of record and formulating plaintiff's RFC.</u>

The following brief procedural history is provided in order to better understand the context of plaintiff's arguments. Plaintiff previously filed applications for SSI and DIB benefits on October 8, 2008, alleging a disability onset date of July 17, 2008. *See* Tr. 72. These claims were denied on October 21, 2010, by ALJ Sheila Lowther. (Tr. 72-81). The Appeals Council upheld ALJ's Lowther's decision in December 2011.[3] (Tr. 141-46). Plaintiff did not seek judicial review of the Appeals Council's 2011 determination. Rather, in November 2010, plaintiff filed the applications for SSI and DIB benefits which are the subject of this lawsuit. *See* Tr. 206-17. While plaintiff's instant SSI and DIB applications allege the same disability onset date – July 17, 2008 – as the 2008 applications, for purposes of assessing the sufficiency of ALJ Shaugnessy's non-disability determination, the Court's review of the record is primarily concerned with the evidence from the period of October 22, 2010 to August 12, 2012 – the date of the ALJ's decision. *See Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997) ("Absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ."). *See also* Acquiescence Ruling 98-4(6), 1998 WL 283902, at *3 (June 1, 1998).[4] The Court now turns to plaintiff's arguments.

---

[3] ALJ Shaughnessy's RFC formulation is the same as ALJ Lowther's. *See* Tr. 23, 76.
[4] "When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law. . . ." *Id.*

Plaintiff's first and third assignments of error contain a hodgepodge of distinct issues that will be addressed in turn.   Plaintiff argues the ALJ erred by giving little consideration to the reports from her treating pain management physician, Mitchell Simons, M.D., who administered multiple epidural injections and denervations throughout 2009 and 2010.   Additionally, plaintiff maintains the ALJ violated the treating physician rule by giving reduced weight to the opinion of her treating nurse practitioner, CNP Panter, because her opinion was based on Dr. Simons' extensive treatment history.   Plaintiff also argues ALJ Shaughnessy erred by not adopting ALJ Lowther's prior Step Two findings and not classifying plaintiff's rheumatoid arthritis and Raynaud's disease[5] as severe impairments.   Plaintiff further finds it "troubling" that neither ALJ addressed plaintiff's fibromyalgia diagnosis in their decisions as plaintiff's medical provider noted that this condition complicated her pain.   Plaintiff also argues the ALJ erred by not taking into account the manipulative limitations found by Martin Fritzhand, M.D., the consultative examining physician who examined plaintiff in connection with her prior disability applications and who noted that plaintiff had required closure of several of her left-hand digits.   Plaintiff maintains the above asserted errors establish that the ALJ's RFC formulation lacks substantial support in the record.   Plaintiff further claims the RFC formulation is deficient because it does not account for the effects of her depression and anxiety – which the ALJ found were non-severe impairments – on her ability to perform substantial gainful activity.   (Doc. 11 at 11-15, 19-23).[6] For the following reasons, the undersigned finds the ALJ did not err in weighing the opinions of plaintiff's treating medical providers or in formulating her RFC.

---

[5]"Raynaud's disease causes some areas of your body – such as your fingers and toes – to feel numb and cold in response to cold temperatures or stress.   In Raynaud's disease, smaller arteries that supply blood to your skin narrow, limiting blood circulation to affected areas (vasospasm)."   *See* http://www.mayoclinic.org/diseases-conditions/raynauds-disease/basics/definition/con-20022916 (last visited January 26, 2015).

a. *Medical Evidence*

The pertinent medical evidence is as follows.   In 2009, plaintiff treated with Mukarram Khan, D.O., of Advanced Spine & Pain Management for back, hip, and knee pain.   (Tr. 365-68). On examination, plaintiff had diminished motor strength secondary to pain, decreased range of motion of the cervical, thoracic, and lumbar spines, and mild tenderness to palpation of the paravertebral muscles.   (Tr. 365, 367).   Dr. Khan's treatment notes refer to a March 2009 MRI of plaintiff's lumbar spine showing facet arthropathy and a disc bulge at L4/5, and a February 2009 EMG showing bilateral S1 radiculopathy.   (Tr. 366, 368).   Dr. Khan diagnosed plaintiff with rheumatoid arthritis, knee pain, facet arthropathy/syndrome, and degenerative disc disease and plaintiff was treated with medication.   (*Id*.).

Plaintiff treated at Greater Cincinnati Pain Management Centers with Dr. Simons from April 2009 through January 2012.   (Tr. 469-520, 536-93).   She was initially referred by her family physician with complaints of cervical, thoracic, and lumbosacral tenderness.   (Tr. 519). Plaintiff received a number of nerve blocks and denervations administered between May 2009 and January 2010 and between March 2011 and January 2012.   (Tr. 470-518, 537-91).   On June 2, 2009, Dr. Simons diagnosed plaintiff with lumbar radiculopathy, rheumatoid arthritis, bilateral sacroliliitis, lumbar degenerative disc disease at L4-L5 and lumbar facet arthropathy.   (Tr. 515). A cervical MRI showed a herniated disc on the right at C6-C7 and a bulging disc at C5-C6. (*Id*.).   On January 13, 2010, Dr. Simons diagnosed lumbar radiculopathy, lumbar facet arthropathy, lumbar degenerative disc disease, and cervical herniated disc C6-7, C5-6.   (Tr. 497).

---

[6]The Court's citations to the parties' memoranda refer to the numbering system provided by the Case Management/Electronic Case Filing (CM/ECF) system.

The record also includes treatment notes from the Mayfield Clinic where plaintiff was treated by Steven Wunder, M.D., in March and April 2010.  (Tr. 369-77).  In March 2010, Dr. Wunder reported that plaintiff had a history of juvenile rheumatoid arthritis and Raynaud's disease, but she had not treated with a rheumatologist.  (Tr. 374).  Examination revealed that plaintiff was tender in "16/18 areas for fibromyalgia"; she had diminished range of motion in her cervical spine; and she had some tenderness and decreased range of motion in the low back.  (Tr. 375).  Results of a March 19, 2010 EMG study were normal.  (Tr. 372).  An April 2010 examination showed plaintiff had diminished cervical range of motion and tenderness to palpation over the neck.  (Tr. 370).  Dr. Wunder initially diagnosed plaintiff with cervical spondylosis, history of abnormal nerve conduction studies, fibromyalgia, and protein C deficiency (Tr. 375), but his final diagnosis was mild cervical spondylosis at C5-6 and C6-7. (Tr. 371).  Plaintiff was not considered a candidate for surgical intervention and was advised to continue physical therapy.  (*Id.*).

Plaintiff treated with orthopedist Dr. Grefer from October 2010 to January 2011.  (Tr. 378-83).  On physical examination, plaintiff had mild decreased movement in her right hip and leg and decreased range of motion in the cervical spine.  (Tr. 382-83).  X-rays revealed some mild acetabular incongruity and obliteration of her sacroiliac joints which Dr. Grefer felt might be the result of a stress injury.  (Tr. 383).  Dr. Grefer reported that he would just follow plaintiff as her treatment with epidural injections was "the main stay of the treatment right now."  (Tr. 382).

Plaintiff was examined by Shannon Colleen Florea, M.D., a rheumatologist, in February 2011.  (Tr. 450-52).  Dr. Florea found that plaintiff had no evidence of synovitis, good range of

9

motion in all joints peripherally, and 5/5 muscular strength.  (Tr. 451).  Plaintiff was positive

for antinuclear antibodies (ANA), possible Raynaud's disease, and degenerative disc disease and

osteoarthritis of the spine.  (Tr. 452).  Dr. Florea did not believe plaintiff had a discrete

connective tissue disease or that the ANA, degenerative disc disease, or spinal osteoarthritis were

related to her complaints of back pain.  (*Id.*).

      The record includes treatment notes from Rasesh Desai, M.D., of Peak Orthopaedics from

November 2011 to January 2012.  (Tr. 530-35).  Plaintiff complained of neck pain and a

December 2011 physical examination revealed vague tenderness over the lower cervical spine,

intact sensation, and 5/5 power in both upper extremities.  (Tr. 532).  Based on an MRI report,

Dr. Desai diagnosed plaintiff with degenerative disc disease with mild foraminal stenosis mainly

left-sided at C5-6 and C6-7, and minimal at C3-4 on the right side.  (Tr. 533).  Dr. Desai

advised plaintiff that the stenosis was not pinching on the spinal cord or nerve roots, she had no

critical spinal stenosis, and she was therefore not a surgical candidate.  (*Id.*).  He recommended

ongoing treatment with epidural injections.  (*Id.*).

      A May 2012 MRI revealed "edema in the right C2 and C3 facet abutting the facet joint"

likely due to facet arthropathy, diffuse degenerative spondylosis of the cervical spine including

disc disease, and mostly right-sided facet arthropathy.  There was mild spinal stenosis at C5-6

and C6-7 without cord compression.  Mild narrowing of the right C4 neural foramen

was present.  (Tr. 633).

      Plaintiff treated with Certified Nurse Practitioner Nancy Panter through Bethel Internal

Medicine/Curtis Everson, M.D.  (Tr. 599-631).  In October 2011, CNP Panter completed a form

for WorkForce One of Clermont County.[7]  (Tr. 621-24).  CNP Panter reported that plaintiff was

unable to use her lower body (strength and mobility) due to cervical and lumbar vertebrae injury.

(Tr. 623).  CNP Panter opined that plaintiff was extremely limited in her abilities to sit, stand,

type, fill out forms, fold paper, file papers, stuff envelopes, and do light lifting.  (Tr. 622-23).

CNP Panter also completed a medical source statement on January 16, 2012.  (Tr. 594-98).

CNP Panter opined that plaintiff can frequently lift less than ten pounds; is unable to lift or carry

or push or pull; can stand and walk less than two hours and sit for less than six hours in an

eight-hour day; can never climb, balance, kneel, crouch, and crawl; and has limited manipulative

functions.  (Tr. 594-98).  CNP Panter said plaintiff's limitations were "due to nerve damage [at]

cervical vertibrai (ruptured) & lumbar vertebrae" based upon "numerous MRIs and nerve

conduction studies (2008-2011)."  (Tr. 596-97).

    After reviewing the record in July 2011, SDM[8] Bradley Herald, opined that plaintiff

could lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently; sit about

six hours in an eight-hour work day; and stand and/or walk about two hours in an eight-hour

work day.  (Tr. 93).  Mr. Herald also found that plaintiff could occasionally stoop, kneel, crawl

and crouch, and never climb ladders, ropes, or scaffolds.  (Tr. 93-94).  Mr. Herald found

plaintiff would have limited overhead reaching.  (Tr. 94).  Mr. Herald "adopted" the ALJ

decision of October 21, 2010.  (*Id.*).  Carlos Hernandez, M.D., a state agency physician,

reviewed the record in May 2011 upon reconsideration and affirmed Mr. Herald's assessment as

to plaintiff's exertional limitations.  (Tr. 122-24).

---

[7]It appears from the record evidence that Workforce One is an organization designed to assist individuals in finding employment.  *See* Tr. 621.
[8]"SDM" is an acronym used by the Social Security Administration for a "Single Decision Maker" – a person with no medical credentials.

Regarding plaintiff's mental health impairments, the record includes treatment notes from LifePoint Solutions where plaintiff received counseling from January 2012 to May 2012.  (Tr. 634-68).   These records include plaintiff's reports of depression, anxiety, and "panic attacks" (Tr. 638, 641, 643, 648, 650, 656) and counselors' observations that plaintiff occasionally presented with an anxious and/or depressed mood.   (Tr. 638, 648, 663).

The evidence was reviewed in February 2011 by state agency reviewing psychologist Lea Perritt, Ph.D.   (Tr. 91-92).   Dr. Perritt noted that on mental status exams, plaintiff was alert and oriented and had no problems with understanding, coherency, or concentration.   (Tr. 92).   Dr. Perritt opined that any restrictions in plaintiff's activities of daily living appeared secondary to her physical conditions.   (*Id.*).   Dr. Perritt concluded that plaintiff's mental impairments were not severe and would not prevent her from doing basic work related activities.   (*Id.*).   State agency reviewing psychologist Jay Athy, Ph.D., reviewed the file in May 2011 and essentially affirmed Dr. Perritt's assessment by adopting ALJ Lowther's October 2010 decision.   (Tr. 121).

b. *Regulatory Standards*

"The Commissioner has elected to impose certain standards on the treatment of medical source evidence."   *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).   "These standards, set forth in administrative regulations, describe (1) the various types of evidence that the Commissioner will consider, 20 C.F.R. § 404.1512; (2) who can provide evidence to establish an impairment, 20 C.F.R. § 404.1513; and (3) how that evidence will be evaluated, 20 C.F.R. § 404.1520b."   *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).   This evidence may include "medical opinions, which 'are statements from physicians and psychologists . . . that reflect judgments about the nature and severity of [a claimant's]

12

impairment(s), including [ ] symptoms, diagnosis and prognosis,' physical and mental restrictions, and what the claimant can still do despite his or her impairments." *Id.,* (citing 20 C.F.R. 404.1527(a)(2)).

The applicable regulations lay out the three types of acceptable medical sources upon which an ALJ may rely on: treating source, nontreating source, and nonexamining source. 20 CFR §§ 404.1502, 416.902. When treating sources offer opinions, the Social Security Administration is to give such opinions the most weight and is procedurally required to "give good reason in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." *Smith v. Comm'r of Soc. Sec.,* 482 F.3d at 875. This requirement only applies to treating sources. *Id.* at 876. "With regard to nontreating, but examining, sources, the agency will simply generally give more weight to the opinion of a source who has examined the claimant than to the opinion of a source who has not examined him." *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 514 (6th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(1)) (internal citations omitted). With this framework in mind, the Court turns to plaintiff's arguments.

c. *Resolution*

First, the undersigned finds that the ALJ did not err in her consideration of Dr. Simons' treatment notes or in weighing CNP Panter's opinion. Plaintiff asserts the ALJ erred by giving "little consideration" to the reports from Dr. Simons. (Doc. 11 at 12). The ALJ cited to the evidence from Dr. Simons and stated that "[plaintiff]'s treatment has been relatively conservative in nature. She has been administered injections and prescribed pain medications, with no recommendations for surgery." (Tr. 25, citing Tr. 469-520, 532-33). Plaintiff does not explain

what further consideration the ALJ should have given these records. Dr. Simons did not give an opinion on the severity of plaintiff's impairments or her functional limitations resulting therefrom and, consequently, the ALJ was not required to engage in the analysis required by the Social Security regulations. *See* 20 C.F.R. §§ 404.1527, 416.927 (prescribing the manner in which medical source opinion evidence should be considered). All the ALJ was required to do with the evidence from Dr. Simons was consider it in her decision-making, *see* 20 C.F.R. §§ 404.1520b, 416.920b, which she did. Accordingly, the ALJ did not err in her discussion of the evidence from Dr. Simons.[9]

Second, the ALJ did not err in giving "little weight" to CNP Panter's opinion as nurse practitioners are not "acceptable medical sources." Only "acceptable medical sources" as defined under 20 C.F.R. § 404.1513(a) and § 416.913(a) can provide evidence which establishes the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight.[10] Although information from "other sources" cannot establish the existence of a medically determinable impairment, the information "may provide insight into the severity of the impairment(s) and how

_____

[9]The undersigned notes that plaintiff cites to evidence from Dr. Simons that was not before the ALJ. *See* Doc. 11 at 13, citing Tr. 669-704. Because this evidence was not before the ALJ, the Court cannot consider it in its substantial evidence review of the ALJ's decision. *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Moreover, plaintiff does not argue in her Statement of Errors that this evidence is grounds for a remand under Sentence Six of 42 U.S.C. § 405(g). However, the Commissioner's argues in her response that a Sentence Six remand is not appropriate in these circumstances (Doc. 16 at 5-6) and plaintiff urges the Court in her reply memorandum to find otherwise. *See* Doc. 19 at 5. Plaintiff's failure to present a developed argument in her Statement of Errors as to whether this late-submitted evidence is grounds for a Sentence Six remand amounts to a waiver. *See Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) (a plaintiff's failure to develop an argument in a Statement of Errors challenging an ALJ's non-disability determination amounts to a waiver of that argument).

[10]Social Security Ruling 06-03p provides that the Commissioner will consider all available evidence in an individual's case record, including evidence from medical sources. The term "medical sources" refers to both "acceptable medical sources" and health care providers who are not "acceptable medical sources." *Id.* (citing 20 C.F.R. § 404.1502 and § 416.902). Licensed physicians and licensed or certified psychologists are "acceptable medical sources." *Id.* (citing 20 C.F.R. § 404.1513(d)(1) and § 416.913(d)). Nurse practitioners are not

it affects the individual's ability to function." *Id.* Factors to be considered in evaluating opinions from "other sources" who have seen the claimant in their professional capacities include how long the source has known the individual, how frequently the source has seen the individual, how consistent the opinion of the source is with other evidence, how well the source explains the opinion, and whether the source has a specialty or area of expertise related to the individual's impairment. *Id.* *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). Not every factor will apply in every case. SSR 06-03p.

Here, the ALJ appropriately considered CNP Panter's January 2012 opinion as "other source" evidence and found it was entitled to "little weight" because the objective medical evidence and treatment notes of record did not support her opinion that plaintiff was limited to less than sedentary work. (Tr. 26). The medical evidence recounted above substantially supports the ALJ's decision. *See, e.g.*, Tr. 365, 375, 382-83, 451, 532 (physical examinations reveal that plaintiff had some diminished range of motion in her back and mild tenderness to palpation, but retained full muscular strength); Tr. 372 (a March 2010 EMG and nerve conduction study was normal); Tr. 371, 533 (plaintiff's foraminal stenosis and cervical spondylosis was classified as mild and she was therefore not a surgical candidate); Tr. 592-93 (an October 2011 MRI showed minor disc desiccation and/or countour changes at L2/3 and L3/4 without neural compromise and there was a tiny anterior annular tear at L3/4); Tr. 530 (a 2012 EMG showed no evidence of right or left cervical radiculopathy); Tr. 633 (the most recent MRI evidence shows that plaintiff had mild spinal stenosis with no cord compression and mild narrowing of the right C4 neural foramen). *See also* Tr. 93-94, 122-24 (the state agency

---

"acceptable medical sources" and instead fall into the category of "other sources." *Id.* (citing 20 C.F.R. § 404.1513(d)(1) and § 416.913(d)).

reviewing physician found that plaintiff retained the RFC to perform the limited range of sedentary work as determined by the ALJ). Plaintiff has not directed the Court's attention to any specific transcript references or medical evidence that supports CNP Panter's opinion on plaintiff's limited functional abilities or which otherwise establishes that the ALJ erred in assessing her opinion.[11] As the ALJ's determination in this regard is supported by substantial evidence, her decision should be affirmed.

Third, the ALJ was not required to take into account the opinion of consultative examining physician Dr. Fritzhand. Plaintiff, who is predominately left-handed, asserts the ALJ erred by not addressing her manipulative limitations given Dr. Fritzhand's report that plaintiff required "closure of several digits of the left hand several years ago." (Doc. 11 at 14-15).[12] Plaintiff does not provide any citation to Dr. Fritzhand's report which is unsurprising given that it is not part of the administrative record; rather, it was part of plaintiff's prior applications. *See* Tr. 77 (ALJ Lowther recounted Dr. Fritzhand's finding that plaintiff had an earlier injury to her left hand which caused somewhat diminished manipulative ability on the left side). It is plaintiff's duty to put forth evidence establishing her limitations and the ALJ was only required to consider the evidence before her. *See* 20 C.F.R. §§ 404.1512, 406.912. The ALJ did not err

---

[11]Plaintiff argues that the ALJ erred under *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541-42 (6th Cir. 2007), by failing to provide any basis for her rejection of CNP Panter's opinion. (Doc. 19 at 4-5). In *Cruse*, the Sixth Circuit Court of Appeals held that an ALJ erred by discounting the opinion of a treating nurse practitioner solely on the basis that the nurse practitioner lacked the requisite credentials for making determinations as to the plaintiff's ability to work and because the decision was "devoid of any degree of specific consideration of [the source's] functional assessments. *Id.* at 541. Here, however, the ALJ did not dismiss CNP Panter's decision out-of-hand but gave it some, albeit "little," weight. (Tr. 26). Further, the ALJ considered the specific functional limitations assessed by CNP Panter but found they were not supported by the other medical evidence of record. (*Id.*). As the ALJ discussed this evidence and put forth specific reasons – that are substantially supported by the record evidence – for not fully crediting it, the undersigned finds the ALJ complied with her duties as enunciated in *Cruse*.

by not addressing this evidence because it was not part of the record before her.[13]  *See*

*Drummond*, 126 F.3d at 842.

Fourth, plaintiff claims ALJ Shaughnessy erred by not adopting ALJ Lowther's findings

at Step Two of the sequential evaluation process – that plaintiff's severe impairments include a

history of juvenile rheumatoid arthritis and Raynaud's disease.   Plaintiff contends that ALJ

Shaughnessy's failure to identify these impairments as severe conflicts with the prior ALJ

decision and is internally inconsistent with her finding that "there is no evidence to suggest either

improvement or deterioration in [plaintiff]'s condition that justifies not adopting the prior ALJ

decision from the previously adjudicated period."   (Doc. 11 at 11, 20) (citing Tr. 26-27).

Notably, plaintiff does not cite to any medical evidence in the record that establishes

these impairments cause plaintiff any functional limitations not accounted for by the ALJ's RFC

formulation.   Although the evidence from Drs. Wunder and Florea shows that plaintiff has a

history of being diagnosed with Raynaud's disease and rheumatoid arthritis, *see* Tr. 374, 452,

there is nothing in the record evidence from these or any other medical source as to their impact

on plaintiff's ability to engage in work-related activities.   The mere diagnosis of a condition

does not prove its severity and plaintiff bears the burden of putting forth evidence that her

impairments are disabling.   *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).   As the record

does not establish that plaintiff's Raynaud's disease or rheumatoid arthritis cause functional

---

[13]Plaintiff does not argue nor does the Court find that ALJ Shaughnessy re-opened ALJ Lowther's prior
determination.   *See Crady v. Sec'y of H.H.S.*, 835 F.2d 617, 620 (6th Cir. 1987) (Where an ALJ analyzes a medical
condition through "a period to which no benefits could have been rewarded absent a reopening" and the "opinion
makes no reference to the prior adverse determinations, [and] does not refer to *res judicata* . . . [i]t appears obvious
that the ALJ reopened the prior application, as he may do even though there is no express statement that he has done
so.").   Here, ALJ Shaughnessy limited her review to the medical evidence that post-dated the date of ALJ Lowther's
decision and   she specifically found that she was bound by the doctrine of *res judicata* as enunciated in *Drummond*.
(Tr. 26).   Accordingly, ALJ Shaughnessy did not reopen ALJ's Lowther's prior disability determination.

limitations greater than those imposed by the ALJ in her RFC formulation, any error committed by the ALJ in failing to classify them as severe is harmless.

Likewise, the ALJ's failure to discuss plaintiff's fibromyalgia diagnosis is, at most, harmless error. As noted above, Dr. Wunder examined plaintiff on March 9, 2010, and found that "[s]he was tender in 16/18 areas for fibromyalgia." (Tr. 375). Based on this examination, Dr. Wunder diagnosed plaintiff with fibromyalgia. (*Id.*). He examined plaintiff again on April 23, 2010, and stated that plaintiff "has background fibromyalgia which complicates her pain picture." (Tr. 370). However, the evidence cited by plaintiff from Dr. Wunder relates to the previous period adjudicated by ALJ Lowther and there are no functional limitations in any treatment notes ascribed to plaintiff's fibromyalgia. *See* 20 C.F.R. §§ 404.1512(c), 416.912(c) (plaintiff bears the burden of presenting medical evidence to establish severity of impairments). The ALJ's failure to discuss plaintiff's fibromyalgia diagnosis does not require reversal.

Sixth, the ALJ did not err in finding that plaintiff's mental impairments do not cause functional limitations. Plaintiff argues the ALJ erred in determining that her anxiety and depression do not cause more than minimal limitations on her ability to perform basic mental work activities and by relying on the findings of the state agency psychologists for this conclusion. (Doc. 11 at 21). It is unclear whether plaintiff is arguing that the ALJ erred by not classifying her mental health impairments as severe or by not fashioning an RFC that accommodates the functional limitations caused by her depression and anxiety. In any event, this distinction is not crucial as the Court finds the ALJ did not err in either regard. Plaintiff has failed to identify any medical findings or opinion evidence showing that her depression or anxiety limits her functional capacity. The treatment notes from LifePoint Solutions contain

18

little information aside from plaintiff's subjective reports and her counselor's observations on three occasions that plaintiff appeared anxious and/or depressed. *See* Tr. 634-68. Further, there is no opinion evidence from any of plaintiff's mental health providers that establishes these conditions are severe or that they cause functional limitations. The only opinion evidence in the record is from the state agency reviewing psychologists who both found that plaintiff's anxiety and depression were not severe impairments and did not limit her ability to do work related activities. *See* Tr. 91-92, 121. Given the absence of any medical evidence showing that these impairments limit plaintiff's functional abilities, the undersigned finds the ALJ did not err in finding that plaintiff's depression and anxiety were not severe impairments and by not including additional functional limitations in her RFC formulation to accommodate them. *See Rabbers*, 582 F.3d at 652.

In conclusion, the Court finds that the ALJ complied with the relevant Social Security regulations in evaluating the medical evidence of record and in making her severity and RFC findings. Plaintiff has not satisfied her burden of putting forth evidence establishing that she has functional limitations that are not accommodated by the ALJ's RFC formulation. Accordingly, plaintiff's first and third assignments of error should be overruled.

2. Whether the ALJ erred in assessing plaintiff's credibility.

Subjective complaints of "pain or other symptoms shall not alone be conclusive evidence of disability. . . ." 42 U.S.C. § 423(d)(5)(A). Subjective complaints are evaluated under the standard set forth in *Duncan v. Sec'y of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. *Id.* at 853. If

19

there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of the pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Id*.

In addition to the objective medical evidence, the Commissioner must consider the opinions and statements of the plaintiff's doctors. *Felisky v. Bowen*, 35 F.3d 1027, 1040 (6th Cir. 1994). Additional specific factors relevant to the plaintiff's allegations of pain include her daily activities; the location, duration, frequency and intensity of her pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication plaintiff takes to alleviate her pain or other symptoms; treatment other than medication plaintiff has received for relief of her pain; and any measures the plaintiff uses to relieve her pain. *Id*. at 1039-40; 20 C.F.R. §§ 404.1529(c), 416.929(c). Although plaintiff is not required to provide "objective evidence of the pain itself" in order to establish that she is disabled, *Duncan,* 801 F.2d. at 853, statements about her pain or other symptoms are not sufficient to prove her disability. 20 C.F.R. §§ 404.1529(a), 416.929(a). The record must include "medical signs and laboratory findings which show that [plaintiff has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that [plaintiff is] disabled." *Id*.

Here, the ALJ determined that plaintiff's claims of disabling pain were not fully credible because: (1) "the medical records reflect that her physical issues are not so severe that they preclude [a] limited range of sedentary work"; (2) plaintiff's treatment has been relatively

20

conservative in nature; (3) the objective evidence shows "only minimal findings regarding her back and neck"; and (4) plaintiff's activities of daily living are "not limited to the extent one would expect given her allegations of disabling pain." (Tr. 24-25). Plaintiff asserts the ALJ erred in failing to fully credit her subjective statements regarding the limiting effects of her impairments, including pain. Plaintiff maintains that her subjective statements were consistent with the reports from her treating physicians and, therefore, the ALJ should have found her fully credible. Plaintiff further maintains the ALJ ignored her treating sources and her extensive treatment history with Dr. Simons in assessing her credibility. Plaintiff criticizes the ALJ's reliance on the opinions of consultative examiners to dispute the veracity of her statements and contends the ALJ erred under *Duncan v. Sec'y of Soc. Sec.*, 801 F.2d 847 (6th Cir. 1986) in doing so. (Doc. 11 at 15-19). For the reasons that follow, the undersigned finds that the ALJ's credibility determination is substantially supported by the evidence of record.

First, although plaintiff argues that her subjective statements are supported by her treating physicians (Doc. 11 at 17), there is no opinion evidence in the record from a treating physician. The only treating source opinion in the record is from CNP Panter which the Court has already determined that the ALJ was entitled to discount because nurse practitioners are not acceptable medical sources and the opinion is not consistent with the objective and clinical medical evidence. Moreover, as stated above, CNP Panter's opinion is inconsistent with the acceptable medical source opinions of record and the objective and clinical evidence of record. This evidence, thus, does not suffice to show that plaintiff suffers from disabling pain.

Additionally, plaintiff's assertion that the ALJ improperly relied on reports submitted by consultative examiners as opposed to her treating physician (Doc. 11 at 17) is erroneous. The

21

ALJ found that plaintiff's statements were not fully credible because the medical evidence in the record supported a finding that plaintiff retained the RFC to perform a limited range of sedentary work. (Tr. 24). In support, the ALJ cited to evidence from plaintiff's medical providers, including Dr. Khan, Dr. Grefer, Dr. Florea, and Dr. Desai, including their objective and clinical findings based on physical examinations. (Tr. 24-25). The ALJ did not, however, cite to opinions from consultative examining physicians to support her credibility finding, most likely because there were none in the record before the ALJ.

Second, the clinical and objective evidence cited by the ALJ supports her conclusion that plaintiff's allegations of disabling pain are not fully credible. As reasonably noted by the ALJ, plaintiff's clinical findings are largely normal, aside from findings of decreased range of motion in the spine and mild tenderness to palpation of her back muscles. *See*, *e.g.*, Tr. 365, 367, 370, 382-83, 451. Further, the ALJ accurately described the objective evidence of record as containing minimal findings. *See* Tr. 372 (a March 19, 2010 EMG study revealed normal findings); Tr. 533 (Dr. Desai's treatment notes recounted MRI findings of mild foraminal stenosis mainly left-sided at C5-6 and C6-7, and minimal at C3-4 on the right side); Tr. 633 (the May 2012 MRI showed mild spinal stenosis with no cord compression). Plaintiff has not cited to any medical evidence that supports her subjective statements or that is inconsistent with the ALJ's characterization of the record. The undersigned therefore finds that the clinical and objective medical evidence of record substantially supports the ALJ's decision to discount plaintiff's credibility. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531-32 (6th Cir. 1997) (ALJ may discount plaintiff's statements of disabling symptoms where record lacks objective,

22

physical, or clinical evidence of disabling severity and statements are inconsistent with activities of daily living).

Third, the ALJ did not err by considering plaintiff's activities of daily living in assessing her credibility. The ALJ noted plaintiff's reports and testimony that she is able to perform self-care tasks and other activities, such as preparing simple meals, performing light household chores, driving, grocery shopping, handling financial matters, and caring for her young children. (Tr. 25-26, citing Tr. 50-52, 248-49). Notably, plaintiff's testimony that she is unable to go shopping alone because she is unable to carry items (Tr. 52) is inconsistent with her statement on a Function Report that she goes shopping alone twice weekly. (Tr. 249). The ALJ concluded that in consideration of these reports, as well as the other evidence identified by the ALJ and discussed *supra*, plaintiff retained the capacity perform a range of sedentary work. (Tr. 24). The ALJ did not mischaracterize the evidence relating to plaintiff's activities of daily living or determine that these activities, standing alone, supported discounting her credibility. The ALJ simply cited to plaintiff's activities of daily living as one of several bases for discounting her credibility. It was not improper for the ALJ to consider this evidence in assessing plaintiff's credibility. *See Walters*, 127 F.3d at 531-32.

The ALJ here conducted a thorough evaluation of plaintiff's complaints of pain and other disabling symptoms in light of the objective, clinical, and opinion evidence of record. *See* Tr. 24-26. This evidence simply does not establish that plaintiff's impairments could reasonably be expected to produce the disabling pain she alleges. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). The ALJ's decision to find plaintiff's complaints of disabling pain less than fully credible is substantially supported by the record evidence.

Accordingly, plaintiff's second assignment of error should be overruled.

**III. Conclusion**

For the reasons stated herein, the undersigned recommends that the ALJ's decision be

**AFFIRMED** and that this matter be closed on the docket of the Court.

Date: ___1/30/2015___

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

MARSHA A. MESSINA,
      Plaintiff,

   vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

Case No. 1:14-cv-104

Black, J.

Litkovitz, M.J.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.   Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.   Failure to make objections in accordance with this procedure may forfeit rights on appeal.   *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).